## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

_____

<table>
<tr><td>LOYAL FEATHERSTONE CONSTRUCTION,</td><td>)</td><td>Shelby County Chancery Court</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff/Appellee.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>VS.</td><td>)</td><td>C.A. No. 02A01-9709-CH-00213</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>ROBERT COLEMAN, ET UX,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants/Appellants.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

FILED

**October 26, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Chancery Court of Shelby County at Memphis
**Honorable Neal Small, Chancellor**

**John C. Scheeper, Jr.**, SCHEEPER LAW FIRM, Memphis, Tennessee
Attorney for Defendants/Appellants.

**William L. Hendricks, Jr.**,
**Venita Marie Martin**,
GLANKLER BROWN, PLLC, Memphis, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

Defendants Robert and Janice Coleman appeal the trial court's final judgment awarding Plaintiff/Appellee Loyal Featherstone Construction, Inc., the sum of $30,067.18 in this breach of contract action. We reverse the trial court's judgment based on our conclusion that the record contains insufficient evidence to support the trial court's finding that the Colemans breached the subject contract.

The construction company instituted this breach of contract action in June 1996 when it filed a complaint seeking damages and other relief against the Colemans. The complaint alleged that in April 1995 the parties entered into a contract for the sale of a newly constructed residence located at 7540 Starfire Cove in Memphis, Tennessee. The contract, which was attached to the complaint and admitted in the answer, contained the following provisions relative to the Colemans' obligation to close the sale upon the construction company's completion of the home:

> It is understood and agreed between the parties that Seller shall be deemed to have performed this Contract as to construction of the improvements when a clear final inspection has been obtained from the FHA and/or DVA and/or the Shelby County Building Department. . . . Purchaser shall completely inspect the residence prior to closing with Seller or Seller's Agent. Purchaser and Seller shall agree in writing, those items that will be repaired or completed by Seller within a reasonable time. Seller will make his best effort to correct all reasonable defects; however, it may not be possible to do so prior to closing. Purchaser agrees to immediately close the said loan and purchase the [subject] Property within three (3) working days after the completion of Property, loan approval, and preparation of closing documents. Failure of Purchaser to close within three (3) working days after these conditions have been met can result in forfeiture of all monies paid to Seller, or in the alternative, a charge of Twenty-five Dollars ($25.00) per day shall be assessed against Purchaser for every day after the three (3) days Purchaser fails to close this sale in order to reimburse Seller for costs in holding this Property by Seller for Purchaser.

The gravamen of the construction company's complaint was that the Colemans breached the contract by failing to close the sale of the property by the scheduled closing date of January 31, 1996. The complaint further alleged that on April 9, 1996, the Colemans' counsel recorded the contract with the Shelby County Register's Office at Instrument Number FU 2741, thereby creating a cloud on the title of the subject property. The Colemans responded to the complaint by filing an answer and a countercomplaint in which they sought specific performance of the contract and other relief.

At trial, most of the evidence was undisputed. The initial closing date was scheduled for August 31, 1995. On that date, however, the construction of the house was incomplete, so the parties agreed to extend the closing date by several months. On January 2 or 3, 1996, the parties compiled a punch list containing approximately twelve items which needed to be completed or corrected. Loyal Featherstone, the owner of the construction company, agreed to complete or correct most of the items on the punch list. On January 18, 1996, however, Featherstone sent a letter to the Colemans in which he refused to reframe the upstairs bathroom ceiling as requested by the Colemans. Featherstone explained that reframing the bathroom ceiling would be too costly, and he proposed an alternate method of addressing the problem, such as moving the shower head.

On January 26, 1996, at the request of the bank which had approved the Colemans' mortgage loan, an appraiser performed a final inspection and appraisal of the home. The appraiser indicated that all construction work was complete on that date. The bank previously had given its final approval of the Colemans' mortgage loan application on December 18, 1995, subject to performance of the final appraisal. Taking the position that all conditions precedent for closing the sale of the home had been met, therefore, the construction company insisted that the Colemans close the sale on or before January 31, 1996.

The Colemans did not attend the scheduled closing, and, thus, the closing did not take place by January 31, 1996. The Colemans decided not to attend the closing because, in their opinion, the construction of the home was not complete. According to the Colemans, Loyal Featherstone had failed to complete or correct many of the items on the punch list. In particular, the Colemans contended that the upstairs bathroom ceiling was too low, and they did not want to close when Featherstone had refused to repair the ceiling. Janice Coleman stated that the Colemans would have closed the sale if Featherstone had corrected the height of the bathroom ceiling.

On February 8, 1996, a Shelby County building inspector inspected the subject house and issued a final inspection report indicating that the house was substantially complete and that it complied with all applicable codes. At the Colemans' request, however, the building inspector returned to the property on March 7 or 8 to reinspect the property. On that date, the building inspector discovered that he had made a mistake in issuing the final inspection report because a

portion of the ceiling in the upstairs bathroom was too low and did not conform with the building codes. After the building inspector discussed the code violation with Loyal Featherstone, Featherstone agreed to correct the height of the bathroom ceiling. By April 1, 1996, when the building inspector again returned to the property, the bathroom ceiling had been corrected.

According to the building inspector, he ordinarily did not miss code violations of the type involving the bathroom ceiling, but occasionally violations did go undetected in the final inspection. In such a situation, the building inspector's usual practice was to ask the builder to correct the problem. If the builder did not correct the problem, the inspector would withdraw his final inspection report. In this case, the building inspector did not withdraw the final inspection report because Featherstone had corrected the violation by April 1, 1996, when the inspector returned to the property a second time. The building inspector stated, however, that he would have withdrawn the final inspection report if he had discovered that the problem had not been corrected when he returned on April 1.

Inexplicably, the record is silent as to any efforts to close the sale of the property after the scheduled closing date of January 31, 1996. The construction company presented no testimony or other evidence that Loyal Featherstone attempted to schedule another closing date after January 31, 1996, when the scheduled closing failed to take place; or after February 8, 1996, when the Shelby County building inspector performed his final inspection of the property; or after April 1, 1996, when Featherstone completed the work on the upstairs bathroom ceiling at the request of the building inspector.

Although Loyal Featherstone failed to testify as to any efforts to close the sale of the property after January 31, 1996, Robert Coleman testified that when the Colemans met the building inspector at the property on March 7 or 8, Featherstone informed the Colemans that they were not allowed on the property, and he threatened to call the police. Moreover, at the subsequent hearing on damages,[1] Featherstone admitted that, sometime in March 1996, he indicated that he would not sell the property to the Colemans because they had breached the contract by not attending the January

_____

[1]These proceedings were bifurcated in that the liability phase of the trial was conducted on December 18, 1996, while the hearing on damages took place on February 24, 1997.

1996 closing.

At the conclusion of the liability phase of the proceedings, the trial court found that the Colemans breached the contract by failing to close the sale of the house. At the subsequent hearing on damages, the trial court found the construction company's total damages to be $30,067.18, and the court entered a judgment for that amount in favor of the company. The trial court's judgment also terminated the subject contract and ordered it expunged from the records of the Shelby County Register's Office. This appeal by the Colemans followed.

On appeal, the Colemans have abandoned their claim for specific performance and have limited their issues on appeal to whether the trial court erred in finding them to be in breach of the subject contract and whether the court erred in awarding damages to the construction company. This appeal, therefore, requires us to determine whether the conditions precedent of the subject contract had occurred so as to impose upon the Colemans the obligation to close the sale of the house by the scheduled closing date of January 31, 1996. Contrary to the trial court's ruling, we conclude that the necessary conditions precedent had not occurred and, thus, that the Colemans had no obligation to close by January 31, 1996.

At trial, the construction company took the position that the occurrence of three conditions triggered the Colemans' obligation to close the sale of the home: (1) the approval of the Colemans' mortgage loan application by the bank; (2) the final appraisal performed by the appraiser at the bank's request; and (3) the final inspection performed by the Shelby County building inspector. The record contains undisputed evidence that the Colemans' loan was approved on December 18, 1995, and that the final appraisal was performed on January 26, 1996. It also was undisputed, however, that the final inspection was not performed by the building inspector until February 8, 1996, more than one week after the scheduled closing date of January 31, 1996. In light of the undisputed evidence that the third condition precedent had not occurred by the scheduled closing date, we conclude that the Colemans had no obligation to close by January 31, 1996, and, thus, that they did not breach the contract by failing to close on that date.

On appeal, the construction company contends that the Colemans were required to

close by January 31, 1996, because the contract's final inspection requirement was satisfied on January 26, 1996, when the appraiser for the bank performed his final inspection and appraisal. Specifically, the construction company contends that the bank appraiser's final inspection satisfied the contract's requirement of obtaining "a clear final inspection . . . from the FHA and/or DVA and/or the Shelby County Building Department." In support of this contention, the construction company's brief asserts that the "bank appraiser's certification [was] used for the FHA inspection."

We conclude that this argument is without merit. After carefully reviewing the record on appeal,[2] we are unable to find any testimony or other evidence which would equate the bank appraiser's final inspection and appraisal with a "clear final inspection . . . from the FHA." We also note that this is not the kind of fact of which this court may take judicial notice. *See Ottinger v. Ottinger*, No. 03A01-9801-CV-00027, 1998 WL 497997, at *2 (Tenn. App. Aug. 20, 1998); *In re Dowling*, No. 01A01-9706-PB-00268, 1998 WL 13067, at *4 (Tenn. App. Jan. 16, 1998); T.R.E. 201(b).

We further conclude that the record fails to contain any evidence to support the finding that the Colemans breached the subject contract by failing or refusing to close the sale after the January 31, 1996, closing date. In order to recover for a purchaser's breach of a contract for the sale of realty, the seller must demonstrate that he (the seller) was "able and ready to perform his part of the contract, unless his inability was due to some act of the purchaser." 92 C.J.S. *Vendor & Purchaser* § 530 (1955) (footnotes omitted). Specifically, the seller "must perform, or offer to perform, his part of the contract as a condition precedent to his right to maintain an action for its breach by the purchaser, unless prior to the time set for performance the purchaser has repudiated the contract or signified his unwillingness to comply therewith." *Id.*; *accord Lafferty v. Pate*, No. 01A01-9303-CH-00085, 1993 WL 312682, at *3 (Tenn. App. Aug. 18, 1993) (indicating that, in order to maintain breach of contract action, seller must prove readiness and willingness to perform or show sufficient justification for not having done so).

In the present case, the construction company failed to present any proof regarding

---

[2]The record on appeal does not include any trial exhibits.

its readiness or willingness to perform the subject contract after the Colemans failed to close by the January 31 closing date.[3] As previously discussed, the construction company presented no evidence that it offered to perform the contract after the January 31 closing date, after the February 8 inspection by the Shelby County building inspector, or after April 1 by which time the construction company had corrected the bathroom ceiling's code violation. The only evidence on this issue suggests that, after January 31, 1996, Loyal Featherstone no longer wished to sell the property to the Colemans.

The construction company also presented no evidence that its failure to offer to perform was justified. Although the Colemans refused to close the sale on January 31, 1996, as we previously explained, the Colemans had no obligation to close at that time. Moreover, although the Colemans insisted that the construction company repair the bathroom ceiling and other problems, the record contains no evidence that the Colemans actually repudiated the contract at any time either before or after January 31, 1996. Under these circumstances, we hold that the construction company was not entitled to recover for the Colemans' breach of contract.[4]

We reverse that portion of the trial court's judgment finding the Colemans in breach of contract and awarding damages to the construction company, and we remand this cause for further proceedings consistent with this opinion. Inasmuch as the Colemans have abandoned their counterclaim for specific performance, we leave in effect that portion of the trial court's judgment terminating the subject contract and ordering it expunged from the records of the Shelby County Register's Office. Costs of this appeal are taxed to the construction company, for which execution may issue if necessary.

_____
FARMER, J.

_____

[3]Inasmuch as the parties previously had extended the closing date, the parties apparently did not consider time to be of the essence in the performance of the contract. *See Tatum v. Worsham*, No. 03A01-9507-CH-00219, 1996 WL 87453, at *2 (Tenn. App. Mar. 1, 1996), *perm. app. denied* (Tenn. May 28, 1996).

[4]Inasmuch as the record contains no evidence that the construction company offered to perform the contract after February 8, 1996, when the building inspector performed his final inspection, we need not address what effect, if any, the inspector's subsequent discovery of the ceiling's code violation had on the Colemans' obligation to close the sale.

CRAWFORD, P.J., W.S. (Concurs)

LILLARD, J. (Concurs)